1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   E.G., a minor, by his Parent, IDA           No.  2:16-cv-02412-TLN-KJN
     GARRETT,
12
                  Plaintiff,
13                                                **ORDER AND MEMORANDUM**
          v.                                      **GRANTING DEFENDANT'S MOTION**
14                                                **FOR SUMMARY JUDGMENT AND**
                                                  **DENYING PLAINTIFF'S CROSS-**
     ELK GROVE UNIFIED SCHOOL                     **MOTION FOR SUMMARY JUDGMENT**
15   DISTRICT,

16                Defendant.

17

18        This matter is before the Court on Defendant Elk Grove Unified School District's

19   ("Defendant") Motion for Summary Judgment (ECF No. 26), and Plaintiff E.G.'s ("Plaintiff")

20   Cross-Motion for Summary Judgment (ECF No. 27).  The parties both oppose each other's

21   motions (ECF Nos. 28 & 29) and filed replies (ECF Nos. 30 & 31).  For the reasons set forth

22   below, Defendant's Motion for Summary Judgment (ECF No. 26) is GRANTED, and Plaintiff's

23   Cross-Motion for Summary Judgment (ECF No. 27) is DENIED.

24   ///

25   ///

26   ///

27   ///

28   ///

                                            1

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a nine-year-old boy residing within the jurisdictional boundaries of Defendant. (Admin. R. (hereafter, "AR") at 510, 564.)  Plaintiff has difficulty with impulse control, sustained attention, emotional regulation, and compliance with activities he does not prefer.  (AR at 564.) In May 2014, Plaintiff was initially assessed and determined eligible for special education services in the Fullerton School District.  (AR at 533, 564.)  In the summer of 2014, Plaintiff and his parent ("Parent") moved to Elk Grove.  (AR at 2–3, 564.)  After Parent registered Plaintiff for school in September 2014, Defendant offered Plaintiff a new Individualized Education Program ("IEP").[1]  (AR at 564.)  Parent disputed aspects of the new IEP.  (AR at 564.)  On March 16, 2015, Plaintiff and Defendant resolved the dispute and entered into a settlement agreement ("2015 Settlement Agreement") wherein Parent agreed to several assessments.  (AR at 93–100, 564.)  On March 17, 2015, Defendant created an assessment plan ("2015 Assessment Plan") to assess Plaintiff.  (AR at 101.)  Parent agreed to the 2015 Assessment Plan.  (AR at 196.) Thereafter, Plaintiff began attending Butler Elementary School.  (AR at 550, 564.)  On May 7, 2015, Parent withdrew Plaintiff from Butler Elementary School.  (AR at 564.)

Most of the assessments Parent agreed to in the 2015 Settlement Agreement were incomplete when Parent withdrew Plaintiff from Butler Elementary School.  (AR at 532, 564.) After Parent withdrew Plaintiff, Parent refused to make Plaintiff available for testing or return rating scales or questionnaires.  (AR at 564.)  Thereafter, Plaintiff began attending a private school in Elk Grove.  (AR at 58, 564.)  Parent requested speech and language support at Plaintiff's private school, but the "incomplete speech and language assessment from spring 2015 tentatively concluded [Plaintiff] no longer need[ed] such support and [wa]s no longer eligible for services in that category."  (AR at 571.)

On October 8, 2015, Gabriela Macias, a school psychologist for Defendant, noted in a

---

[1]  An IEP is "a written statement for each child with a disability that is developed, reviewed, and revised in accordance with section 14149d) of" the Individuals with Disabilities Education Act (the "IDEA").  20 U.S.C. § 1401(14).  Section 1414(d) provides that the IEP must contain a statement of the child's resent levels of academic achievement and functional performance and measurable annual academic and functional goals.  *Id.* § 1414(d)(1). The IEP is developed and reviewed each year by a team comprised of the child's parents, teachers, and other specialists.  *Id.* § 1414(d)(4).

report that "[Plaintiff] is of African-American ethnic background" and thus "the assessment procedures used are in accordance with a judgment by Federal District Court Judge Robert Peckham (in response to C-71-2270 RFP, *Larry P. v. Riles*) which bars the administration of certain tests to this student." (AR at 554.)

On January 12, 2016, an IEP team meeting was held and Plaintiff's needs for placement and services were discussed. (AR at 528, 564.) Parent, Dr. David Paltin, and James D. Peters, III, Plaintiff's representative ("Representative"), attended the meeting by telephone. (AR at 528, 564–65.) Dr. Paltin, a private assessor retained by Plaintiff's family, stated Plaintiff had a diagnosis of attention deficit hyperactivity disorder and Asperger's Syndrome. (AR at 6, 565.) Defendant's IEP team concluded that further assessments of Plaintiff were necessary. (AR at 528, 565.) On January 12, 2016, Defendant prepared an assessment plan ("2016 Assessment Plan") and sought permission to conduct additional assessments of Plaintiff. (AR at 529, 565.)

After Parent did not consent to the 2016 Assessment Plan, on February 19, 2016, Defendant filed a complaint requesting a due process hearing before the Office of Administrative Hearings ("OAH"). (AR at 2.) The question posed in Defendant's complaint was whether Defendant was entitled to conduct assessments pursuant to the 2016 Assessment Plan without Parent's consent. (AR at 8.) On March 7, 2016, Plaintiff requested a continuance in order to retain counsel (AR at 23–24), which Presiding Administrative Law Judge ("ALJ") Margaret Broussard granted (AR at 33–34).

On April 20, 2016, Plaintiff moved to dismiss Defendant's complaint that was then pending before OAH. (AR at 41.) Plaintiff argued OAH did not have jurisdiction because Defendant was essentially requesting an order from OAH enforcing the 2015 Settlement Agreement. (AR at 42.) In support, Plaintiff relied on another ALJ's dismissal of Defendant's complaint in another "virtually identical" matter. (AR at 42.)

On May 3, 2016, ALJ Dena Coggins denied Plaintiff's motion to dismiss. (AR at 119–20.) Distinguishing the instant matter from the matter that Plaintiff characterized as "virtually identical" (AR at 42), ALJ Coggins noted that Defendant's complaint did not raise an issue relating to a breach of the 2015 Settlement Agreement. (AR at 120.) Instead, ALJ Coggins

reasoned that Defendant's complaint related to Parent's purported refusal to consent to an assessment of Plaintiff outside the terms of the 2015 Settlement Agreement. (AR at 120.) Thereafter, Plaintiff moved for reconsideration (AR at 122), which ALJ Coggins granted (AR at 175). On reconsideration, ALJ Coggins again denied Plaintiff's motion to dismiss Defendant's complaint. (AR at 175.)

Accordingly, a due process hearing was scheduled for June 7–9, 2016. (AR at 255.) The day before the due process hearing was scheduled to occur, Representative filed a motion for continuance on Plaintiff's behalf. (AR at 275.) Representative stated he was injured and per his doctor's order, was unable to represent Plaintiff at the hearing. (AR at 276.) Presiding ALJ Broussard denied Representative's requested continuance and notified the parties by telephone. (AR at 446.) On June 7, Presiding ALJ Broussard issued her written order denying the continuance. (AR at 282.) Presiding ALJ Broussard cited numerous issues with Representative's motion and determined Plaintiff had not established good cause for a continuance. (AR at 284–85.) Thus, the hearing took place on June 7 before ALJ Charles Marson. (AR at 563.) There was no appearance for Plaintiff. (AR at 563.) ALJ Marson waited an hour for Parent or Representative to appear. (AR at 563.) After both Parent and Representative failed to appear, ALJ Marson telephoned Representative's office twice but was unable to contact Representative because Representative's voicemail was full. (AR at 563.) ALJ Marson proceeded with the hearing, took evidence, and heard testimony. (AR at 563.)

On June 10, Representative emailed Division Presiding ALJ Bob Varma, asking him to review Representative's motion for continuance that ALJ Broussard denied on June 7. (AR at 348–49.) On June 13, Representative sent a fax to Division Presiding ALJ Varma containing a similar message as the June 10 email. (AR at 397–98.) On June 14, Presiding ALJ Broussard issued a notice of *ex parte* communication and found that Representative's email and fax were intended to affect the outcome of a motion. (AR at 449–50.) As a result, Presiding ALJ Broussard issued an order to show cause relating to the *ex parte* communication. (AR at 458–61.) After a show cause hearing, Presiding ALJ Broussard ordered Representative to pay Defendant's costs relating to the *ex parte* communication. (AR at 503.)

On July 5, 2016, ALJ Marson issued his decision from the June 7 hearing.  (AR at 563–73.)  In the decision, ALJ Marson made numerous factual findings and conclusions of law, ultimately holding that Defendant was entitled to reassess Plaintiff according to the 2016 Assessment Plan, without Parent's consent.  (AR at 572.)

On October 8, 2016, Plaintiff filed a complaint in this Court.  (ECF No. 1.)  On October 25, 2016, Plaintiff filed a First Amended Complaint ("FAC").  (ECF No. 6.)  In the FAC, Plaintiff requests the reversal of ALJ Marson's decision and the reversal of Presiding ALJ Broussard's cost-shifting order.  (ECF No. 6 at 20–21.)  On August 10, 2017, Plaintiff and Defendant filed cross-motions for summary judgment.  (ECF Nos. 26, 27.)  Defendant's motion for summary judgment argues that ALJ Marson's decision and ALJ Broussard's cost-shifting order should both be upheld.  (ECF No. 26 at 9.)  Plaintiff's motion for summary judgment argues that Presiding ALJ Broussard's denial of Representative's requested continuance deprived Plaintiff of his right to due process.  (ECF No. 27 at 7.)

## II.     STANDARD OF LAW

### A.     Review of Administrative Hearing Decisions Pursuant to the IDEA

In California, due process hearings are conducted by the Office of Administrative Hearings, a state agency independent of the Department of Education.  *See M.M. v. Lafayette Sch. Dist.*, 681 F.3d 1082, 1085, 1092 (9th Cir. 2012).  *See also* 20 U.S.C. § 1415(f).  Under the IDEA, "[a] party dissatisfied with the outcome of a due process hearing may obtain further review by filing a civil action in state or federal court."  *Fairfield-Suisun Unified Sch. Dist. v. Cal. Dep't of Educ.*, 780 F.3d 968, 969 (9th Cir. 2015) (citing 20 U.S.C. § 1415(i)(2)(A)).  "[T]he party seeking relief . . . bears the burden of demonstrating that the ALJ's decision should be reversed."  *J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 438 (9th Cir. 2010) (citing *Clyde K. v. Puyallup Sch. Dist., No. 3*, 35 F.3d 1396, 1399 (9th Cir. 1994)).

The IDEA provides that a district court reviewing the outcome of a due process hearing "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C).  "[T]he

district court's obligation to receive the administrative record 'carries with it the implied requirement that due weight shall be given to these proceedings.'" *E.J. ex rel. Tom J. v. San Carlos Elementary Sch. Dist.*, 803 F. Supp. 2d 1024, 1029 (N.D. Cal. 2011) (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 206 (1982)).

More deference is given to the ALJ's decision if the findings are "thorough and careful." *A.M. ex rel. Marshall v. Monrovia Unified Sch. Dist.*, 627 F.3d 773, 778 (9th Cir. 2010) (citing *Capistrano Unified Sch. Dist. v. Wartenberg ex rel. Wartenberg*, 59 F.3d 884, 891 (9th Cir. 1995)). The ALJ's findings are considered thorough and careful when the ALJ "participates in the questioning of witnesses and writes a decision 'contain[ing] a complete factual background as well as a discrete analysis supporting the ultimate conclusions.'" *R.B. ex rel. F.B. v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, 942 (9th Cir. 2007) (alteration in original) (quoting *Park ex rel. Park v. Anaheim Union High Sch. Dist.*, 464 F.3d 1025, 1031 (9th Cir. 2006)). "[B]lind deference is not appropriate. Rather, the district judge must actually examine the record to determine whether it supports the ALJ's opinion." *M.C. ex rel. M.N. v. Antelope Valley Union High Sch. Dist.*, 858 F.3d 1189, 1194 n.1 (9th Cir. 2017). Nevertheless, "'complete de novo review' of the administrative proceeding 'is inappropriate.'" *Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 817 (9th Cir. 2007) (quoting *Amanda J. ex rel. Annette J. v. Clark Cty. Sch. Dist.*, 267 F.3d 877, 887 (9th Cir. 2001)).

In summary, a district court reviewing an appeal from an administrative decision satisfies the IDEA's mandate where it "read[s] the administrative record, consider[s] [any] new evidence, and make[s] an independent judgment based on a preponderance of evidence and giving due weight to the hearing officer's determinations." *Capistrano Unified Sch. Dist.*, 59 F.3d at 892. "Though the parties may call the procedure a 'motion for summary judgment' in order to obtain a calendar date from the district court's case management clerk, the procedure is in substance an appeal from an administrative determination, not a summary judgment." *Id.*; *see also J.L. v. Manteca Unified Sch. Dist.*, No. 2:14-cv-01842-WBS-EFB, 2016 WL 3277260, at *5–6 (E.D. Cal. June 14, 2016) ("The Ninth Circuit has recognized that the procedure under the IDEA is 'not a true summary judgment procedure,' but is 'essentially . . . a bench trial based on a stipulated

record.'" (quoting *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1472 (9th Cir. 1993))).

### III.  ANALYSIS

The Court has divided the parties' arguments into eight inquiries, which the Court will address as follows: (i) whether the ALJ's decision is entitled to enhanced deference because it was thorough and careful; (ii) the 2016 Assessment Plan and applicability of *Larry P*; (iii) whether Defendant has the right to reassess Plaintiff without Parent's consent; (iv) ALJ Marson's decision to deny Representative's request for a continuance of the due process hearing; (v) whether Plaintiff's due process rights were violated because he had no representation at the due process hearing; (vi) whether Plaintiff was precluded from making a viable jurisdictional argument at the due process hearing; (vii) typographical error; and (viii) ALJ Broussard's cost-shifting order.[2]  Ultimately, for the reasons set forth below, the Court grants Defendant's motion for summary judgment (ECF No. 26) and denies Plaintiff's motion for summary judgment (ECF No. 27).  Accordingly, ALJ Marson's order permitting the reassessment of Plaintiff and ALJ Broussard's order requiring cost-shifting are both upheld.

### A.  Whether ALJ Marson Made a Thorough and Careful Decision

Defendant argues ALJ Marson made a thorough and careful decision based on the evidence presented at the hearing.  (ECF No. 30 at 2.)  The Court agrees.  ALJ Marson questioned witnesses.  (*See, e.g.*, AR at 637, 652.)  ALJ Marson's decision contains a complete factual background (AR at 564–68), and a discrete analysis supporting the ultimate conclusions (AR at 568–72).  As such, ALJ Marson's decision was thorough and careful, and thus deserves great deference.  *Napa Valley Unified Sch. Dist.*, 496 F.3d at 942.

Plaintiff states the majority of the ALJ's factual findings are inaccurate or fail to include material facts, thus making a thorough and careful analysis impossible.  (ECF No. 27 at 22; ECF No. 29 at 6–7.)  More specifically, Plaintiff says that if Representative had been at the hearing, Representative would have questioned witnesses and presented evidence, and therefore ALJ Marson could have considered this new evidence.  (ECF No. 27 at 22; ECF No. 29 at 6.)

---

[2]  The Court declines to address the parties' arguments regarding the declaration of James Peters III, as the Court did not rely on this declaration in making its decision.  (*See* ECF No. 27 at 31–37.)  The Court references the declaration solely to acknowledge that Mr. Peters is an individual with purportedly specialized knowledge.

1    However, Plaintiff does not demonstrate this additional evidence would have caused ALJ Marson

2    to reach a different conclusion.[3]

3        First, Plaintiff mentions how Defendant dispatched the Sheriff's Department to Parent's

4    home for a school attendance violation concerning Plaintiff, but at the time Plaintiff was not old

5    enough to be covered by the compulsory education law.  (ECF No. 27 at 22–23.)  Nevertheless,

6    Plaintiff does not explain how Defendant's alleged conduct regarding this home visit would have

7    affected ALJ Marson's conclusion.  Thus, the Court finds Defendant's alleged conduct regarding

8    the home visit unrelated to ALJ Marson's decision allowing reassessment of Plaintiff.  *See* Cal.

9    Educ. Code § 56381(a)(1) (stating reassessment "shall be conducted if the local educational

10   agency determines that the educational or related needs . . . of the pupil warrant a reassessment").

11       Second, Plaintiff states ALJ Marson's factual findings incorrectly say Parent registered

12   Plaintiff for school on September 19, 2014.  (ECF No. 27 at 23.)  Again, Plaintiff fails to show

13   how the inclusion of the allegedly correct registration date would have affected ALJ Marson's

14   decision.  Hence, the Court finds the registration date would not have affected ALJ Marson's

15   decision because the registration date is unrelated to a finding that Student's needs warrant

16   reassessment.  *See* Cal. Educ. Code § 56381(a)(1).

17       Third, Plaintiff argues ALJ Marson's finding that Parent withdrew Plaintiff from Butler

18   Elementary School for reasons not in the record is inaccurate.  (ECF No. 27 at 23.)  Despite

19   Plaintiff's assertion Parent withdrew Plaintiff due to Defendant's improper conduct (ECF No. 27

20   at 23; ECF No. 29 at 7), Plaintiff does not describe how the reasons behind the withdrawal would

21   have influenced ALJ Marson's decision.  The Court finds the reasons for Plaintiff's withdrawal

22   unrelated to ALJ Marson's decision because reason for withdrawal is not a consideration when

23   determining if reassessment is warranted.  *See* Cal. Educ. Code § 56381(a)(1).

24       Fourth, Plaintiff contends ALJ Marson did not consider how the 2016 Assessment Plan

25   was invalid on its face because it sought intellectual assessments of Plaintiff in violation of *Larry*

26   ―――――――――――――――――
     [3]     Moreover, Plaintiff cannot challenge ALJ Marson's factual findings by arguing Representative would have
27   questioned witnesses and presented evidence when Plaintiff waived the right to question witnesses and present
     evidence.  At least one other federal district court has held that a plaintiffs' failure to appear at an IDEA
28   administrative hearing constituted a waiver of rights which could not be litigated upon appeal.  *Horen v. Bd. of Educ.*
     *of City of Toledo Pub. Sch. Dist.*, 655 F. Supp. 2d 794, 806 (N.D. Ohio 2009).

*P.* (ECF No. 27 at 24.)  However, the 2016 Assessment Plan was not invalid on its face as discussed below.

Fifth, Plaintiff asserts ALJ Marson did not discuss how Defendant's OAH complaint should have been dismissed because the complaint raised an issue outside OAH's jurisdiction. (ECF No. 27 at 27.)  Despite Plaintiff's assertion, OAH previously considered Plaintiff's jurisdiction argument and found it without merit, as more thoroughly discussed below.

Sixth, Plaintiff states ALJ Marson was unable to consider Defendant's conduct at the January 12, 2016 IEP meeting.  (ECF No. 29 at 6.)  Plaintiff does not offer any explanation for how Defendant's conduct at the IEP meeting relates to whether Defendant has the right to reassess Plaintiff.  *See* Cal. Educ. Code § 56381(a)(1).  Therefore, the Court finds consideration of Defendant's alleged IEP meeting conduct by ALJ Marson would not have affected ALJ Marson's decision.

The Court finds that the examples provided by Plaintiff do not show that ALJ Marson would have reached a different conclusion had Representative been present at the due process hearing.  And based on the Court's review of the administrative record, the Court further finds that ALJ Marson made a thorough and careful decision that is entitled to deference.  *See Napa Valley Unified Sch. Dist.*, 496 F.3d at 942.

> B.  Whether ALJ Marson Properly Determined the 2016 Assessment Plan as Proposed was Appropriate

Defendant argues ALJ Marson properly determined that the 2016 Assessment Plan as proposed was appropriate.  (ECF No. 26 at 14.)  Plaintiff argues the 2016 Assessment Plan violated *Larry P. v. Riles*, 502 F.2d 963 (9th Cir. 1974), and California Department of Education directives and policies, and was thus inappropriate.  (ECF No. 1 at 11.)  Defendant argues Plaintiff's reliance on *Larry P.* is misguided.  (ECF No. 28 at 2.)

> *i. Whether the 2016 Assessment Plan Violated Larry P.*

Plaintiff claims it was error for ALJ Marson to declare Defendant has the right to assess Plaintiff under the 2016 Assessment Plan when the 2016 Assessment Plan was invalid on its face under *Larry P.*  (ECF No. 27 at 24–27; ECF No. 29 at 7–10.)  According to Plaintiff, this is

because the 2016 Assessment Plan seeks intellectual testing of Plaintiff, an African American, with no acknowledgement of alternative assessments. (ECF No. 29 at 8.) In opposition, Defendant argues it was aware of the requirements for testing Plaintiff and was going to assess Plaintiff according to all legal mandates. (ECF No. 26 at 14.)

Plaintiff cites to the four opinions in the *Larry P.* line of decisions in support of his argument that assessing African American students through intellectual testing is prohibited. (ECF No. 27 at 44.) However, Plaintiff's understanding of the *Larry P.* line of cases is misguided. The 1972 *Larry P.* decision, and the resulting 1974 appellate decision, specifically applied to intelligence quotient ("I.Q.") testing. *Larry P. v. Riles*, 343 F. Supp. 1306, 1314–15 (N.D. Cal. 1972), *aff'd*, 502 F.2d 963 (9th Cir. 1974). Further, the 1979 *Larry P.* decision, and the resulting 1984 appellate decision, also concerned I.Q. testing. *Larry P. v. Riles*, 495 F. Supp. 926, 952 (N.D. Cal. 1979), *aff'd in part, rev'd in part*, 793 F.2d 969 (9th Cir. 1984). The *Larry P.* line of decisions does not prohibit all intellectual testing of African American students referred for special education assessment, only testing that generates an I.Q. *See Crawford v. Honig*, 37 F.3d 485, 486 (9th Cir. 1994), *as amended on denial of reh'g* (Jan. 6, 1995). As such, the cognitive abilities of African American students may be assessed by other means beside I.Q. testing. *See, e.g.*, *Student v. S.F. Unified Sch. Dist.*, OAH Case No. 2014080645, at 6 n.6 (Feb. 27, 2015), https://www.dgs.ca.gov/OAH/Case-Types/Special-Education/Services/Decisions?search= 2014080645. Just because the 2016 Assessment Plan indicates Defendant is to assess Plaintiff's intellectual development, (AR at 529), does not mean Defendant will conduct I.Q. testing.

Additionally, the evidence indicates Defendant is aware of Plaintiff's race and ethnicity and planned to conduct assessment procedures in accordance with the *Larry P.* line of decisions. (AR at 554.) Specifically, a report by Defendant dated October 8, 2015, notes "[Plaintiff] is of African-American ethnic background" and thus "the assessment procedures used are in accordance with a judgment by Federal District Court Judge Robert Peckham (in response to C-71-2270 RFP, *Larry P. v. Riles*)." (AR at 554.)

Plaintiff makes several objections regarding the "alternative assessment box" on the 2016

Assessment Plan (ECF No. 29 at 8–9), which are unavailing.  Plaintiff states that the "alternative assessment box" needed to be checked on the 2016 Assessment Plan in order for Parent to give informed consent to any such procedure.  (ECF No. 29 at 8–9.)  Plaintiff alleges that the failure to check the "alternative assessment box" indicates Defendant had no intention of providing Plaintiff with an appropriate and lawful alternative assessment.  (ECF No. 27 at 26.)  Despite Plaintiff's statements, Plaintiff provides no authority requiring a school district to state it intends to comply with applicable law on an assessment plan, nor does Plaintiff provide authority that dictates the "alternative assessment box" must be checked for students such as Plaintiff.  The record neither confirms nor denies that "Intellectual Testing" includes I.Q. testing.  (*See* AR at 529.)  Without evidence that "Intellectual Testing" specifically includes I.Q. testing for Plaintiff, Plaintiff has failed to demonstrate how the 2016 Assessment violates the *Larry P.* standard.

Finally, Plaintiff argues that the 2016 Assessment Plan does not state Defendant intends to comply with applicable law.  (ECF No. 29 at 8.)  However, in contrast to Plaintiff's assertion, as stated above, the October 8, 2015 report clearly indicates Defendant is aware of Plaintiff's ethnicity and intends to comply with the *Larry P.* line of cases.  (AR at 554.)

Accordingly, the 2016 Assessment Plan is not invalid on its face under *Larry P.* and Plaintiff's objections regarding the *Larry P.* line of decisions are not grounds to reverse ALJ Marson's decision.

### *ii. Whether the Appropriateness of the Assessments can be Disregarded*

Plaintiff argues that "the appropriateness of the assessments requested cannot be disregarded."  (ECF No. 29 at 7.)  Plaintiff states OAH "cannot rule that a school district has the right to conduct an assessment without first determining that assessment is lawful, especially when the legality of the assessment is challenged, as it has been continuously in regard to [Defendant's] requests to asses [Plaintiff]."  (ECF No. 29 at 8.)  The sole grounds upon which Plaintiff relies in attacking the validity of the 2016 Assessment Plan is its alleged noncompliance with *Larry P.*  (ECF No. 29 at 8.)  But as stated herein, the Court has upheld ALJ Marson's ruling that the 2016 Assessment Plan did not violate *Larry P.*  In other words, ALJ Marson did in fact "determin[e] that assessment is lawful."  (ECF No. 29 at 8.)  Plaintiff provides no other authority

1 that would compel the Court to overturn ALJ Marson's analysis regarding the legality of the 2016

2 Assessment Plan.

C.  <u>Defendant's Right to Reassess Plaintiff Without Parent's Consent</u>

4      The parties dispute whether Defendant has the right to reassess Plaintiff without Parent's

5 consent.  (ECF No. 27 at 7; ECF No. 26 at 14–15.)  An examination of the record reveals the

6 preponderance of the evidence supports ALJ Marson's decision that Defendant has the right to

7 reassess Plaintiff pursuant to the 2016 Assessment Plan without Parent's consent.

8      Simply put, if Parent wants Plaintiff to receive special education services, Parent must

9 permit reassessment when warranted.  *See Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307,

10 1315 (9th Cir. 1987).  If Parent wished to enroll Plaintiff in a private program without

11 Defendant's support, Defendant could not require an assessment, but that is not the case here.  *Id.*

12 Here, Parent has requested that Defendant provide speech and language support at Plaintiff's

13 private school, but the "incomplete speech and language assessment from spring 2015 tentatively

14 concluded [Plaintiff] no longer needs such support and is no longer eligible for services in that

15 category."  (AR at 571.)  Without further assessments, "the IEP team simply lacks the necessary

16 information to determine eligibility, describe present levels of performance, develop goals, or

17 decide upon necessary services."  (AR at 571.)  Because Parent has requested support from

18 Defendant, Defendant can require assessment of Plaintiff.  *See Gregory K.*, 811 F.2d at 1315.

19      If a student's parents do not consent to a reassessment plan, a school district may only

20 conduct the reassessment by demonstrating at a due process hearing the district needs to reassess

21 the student and is lawfully entitled to do so.  20 U.S.C. § 1414(a)(1)(D); 34 C.F.R. §

22 300.300(a)(3); Cal. Educ. Code §§ 56381(f)(3), 56506(e).  Therefore, a district must show at a

23 due process hearing it has "determine[d] that the educational or related services needs, including

24 improved academic achievement and functional performance, of the child warrant a

25 reevaluation." 20 U.S.C. § 1414(a)(2)(A)(i); *see also* Cal. Educ. Code § 56381(a).  Additionally,

26 the reassessment plan must be in language easily understood by the public, be in the parent's

27 native language, explain the types of assessments to be conducted, and state that no IEP will

28 result from the assessment without the parent's consent.  Cal. Educ. Code § 56321(b).  Further, a

parent has fifteen days to sign and return the reassessment plan.  *Id.* § 56321(c)(4).

ALJ Marson found Defendant complied with the necessary requirements regarding the 2016 Assessment Plan.  (AR at 570.)  The record supports this finding.  For example, the 2016 Assessment Plan (i) was provided to Parent on January 12, 2016 and January 22, 2016 (AR at 661–63); (ii) explained the types of assessments to be conducted (AR at 529); (iii) was in Parent's native language (AR at 529, 659–60); and (iv) was accompanied by the required notifications (AR at 660–61).  Additionally, the record supports ALJ Marson's finding that Parent had more than fifteen days to sign and return the 2016 Assessment Plan, but Parent did not do so. (*See* AR at 657.)

Moreover, ALJ Marson's finding that conditions warrant reassessment of Plaintiff has support in the record.  The evidence shows the assessment data from the Fullerton School District is outdated: Patricia Spears Lee, a program specialist administrator in Defendant's Special Education Department, stated that Plaintiff's assessment from the Fullerton School District was no longer relevant because Plaintiff had aged since the earlier assessment.  (AR at 653, 656.) Additionally, there is evidence Defendant did not have enough assessment information from Plaintiff in order to determine his eligibility.  For example, Erica Winn, a program specialist and behavior analyst, conducted a functional behavioral assessment of Plaintiff in April 2015, but Ms. Winn noted the results were incomplete.  (AR at 532, 537.)

Accordingly, the Court finds ALJ Marson's order that Defendant has the right to reassess Plaintiff pursuant to the 2016 Assessment Plan without Parent's consent is supported by a preponderance of the evidence in the record.

### D. Whether the Motion for Continuance was Appropriately Denied Based on the Documents Presented

Plaintiff claims his motion for continuance was proper and supported by good cause and thus the denial was in error.  (ECF No. 27 at 17; ECF No. 29 at 3–5.)  Defendant argues the motion for continuance was appropriately denied after a full analysis of the facts.  (ECF No. 26 at 15–17.)

In California, a continuance of a due process hearing should be granted upon a motion

demonstrating good cause. Cal. Educ. Code § 56505(f)(3). Good cause may include the

unavailability of a party, counsel, or an essential witness due to death, illness or other excusable

circumstances. *See* Cal. Rules of Court, Rule 3.1332(c).[4] OAH considers all relevant facts and

circumstances, including the proximity of the hearing date; previous continuances or delays; the

length of continuance requested; the availability or other means to address the problem giving rise

to the request; prejudice to a party or witness as a result of a continuance and other factors. *See*

Cal. Rules of Court, Rule 3.1332(d). However, "[i]n the event that an application for a

continuance by a party is denied by an administrative law judge of the Office of Administrative

Hearings, and the party seeks judicial review thereof, the party shall, within 10 working days of

the denial, make application for appropriate judicial relief in the superior court or be barred from

judicial review thereof as a matter of jurisdiction." Cal. Gov't Code § 11524(c).

By asking this Court to find the denial of Representative's motion for continuance was in

error (ECF No. 27 at 30), Plaintiff is asking for judicial review of the denial. However, the

evidence establishes Plaintiff did not timely seek judicial review within ten working days of the

initial denial. Presiding ALJ Broussard denied the motion for continuance on June 7, 2016 (AR

at 285) and denied Plaintiff's motion for reconsideration on June 14, 2016 (AR at 447).

However, Plaintiff did not file his initial complaint in this action until October 8, 2016. (ECF No.

1.) Further, Plaintiff does not contend that he applied for judicial relief in the Superior Court of

California, or any court, within ten working days of the denial. Therefore, the Court does not

have jurisdiction over the denial of Representative's motion for continuance. *See J.R. v. Sylvan*

*Union Sch. Dist.*, No. CIV S-06-2136-LKK-GGH-PS, 2008 WL 2345103, at *4 n.1 (E.D. Cal.

June 5, 2008) (noting the court likely did not have jurisdiction over claims regarding the denial of

motions for continuance in OAH hearings because the plaintiffs did not seek interlocutory

review).[5] Accordingly, the Court as a matter of jurisdiction cannot consider Plaintiff's argument

---

[4]    Plaintiff's reply argues it is undisputed between the parties that under Rule 3.1332(c), good cause for a
continuance exists based on the unavailability of a party because of death, illness, or other excusable circumstances.
(ECF No. 31 at 2.) Here, the statutory language is not disputed by the parties, but the statutory language does not
support Plaintiff's argument for a continuance because Plaintiff failed to comply with the procedural mandate of the
California Government Code. *See* Cal. Gov't Code § 11524(c).

[5]    Regardless, the magistrate judge in *Sylvan Union School District* considered the merits of the plaintiff's
arguments. *See Sylvan*, No. CIV S-06-2136 at *4 n.1. Here, in his motion for summary judgment, Plaintiff presents

regarding Presiding ALJ Broussard's denial of Plaintiff's motion for continuance.

E. <u>Whether Plaintiff's Due Process Rights were Violated</u>

Plaintiff argues the denial of the continuance deprived him of his due process rights, including his right to representation by counsel or an advocate and his right to present a defense. (ECF No. 27 at 17–22.) Defendant argues Plaintiff is not entitled to representation by an attorney or advocate and Parent could have exercised Plaintiff's rights on Plaintiff's behalf at the due process hearing. (ECF No. 26 at 17–18; ECF No. 30 at 7–8.)

i. *Right to Representation by Counsel or an Advocate*

Plaintiff contends he had the right to be represented at the hearing by counsel or advocate and depriving Plaintiff of representation at the hearing amounted to denial of access to an adjudicative body. (ECF No. 27 at 17; ECF No. 29 at 7, 10.) Defendant asserts Plaintiff did not have the absolute right to representation at the hearing because it was a civil matter. (ECF No. 26 at 17–18; ECF No. 30 at 7.)

A party to a due process hearing has "the right to be accompanied and advised by counsel and by individuals with special knowledge or training with respect to the problems of children with disabilities." 20 U.S.C. § 1415(h)(1); *see also* Cal. Educ. Code § 56505(e)(1). "This right is not equivalent to a guarantee of effective representation, such as the Sixth Amendment provides in criminal proceedings." *D.C. v. Klein Indep. Sch. Dist.*, 711 F. Supp. 2d 739, 748 (S.D. Tex. 2010). Further, there exists a difference "between a 'right' in the sense that an agency cannot preclude the exercise of an option, and a 'right' in the sense that a hearing cannot go forward absent fulfillment of that entitlement." *Arnett v. Office of Admin. Hearings*, 49 Cal. App. 4th 332, 341 (1996). The right to representation by counsel or advocate at a due process hearing is a right

---

nine factors to consider when evaluating good cause, such as prejudice to the nonmoving party. (ECF No. 27 at 19–20.) Plaintiff fails to demonstrate how most of the factors apply to Plaintiff's case. (ECF No. 27 at 20.) However, Plaintiff argues Defendant would not have faced prejudice if ALJ Broussard had granted the motion for a continuance. (ECF No. 27 at 20.) Defendant responds, arguing that "[w]hile the District recognizes and acknowledges that good cause for a continuance may include circumstances such as the ones cited in the Plaintiff's motion, the fact is that ALJ Broussard clearly reviewed the record and made a determination regarding whether Plaintiff's motion was good cause." (ECF No. 28 at 8.) In the order denying Plaintiff's request for continuance, ALJ Broussard provided six reasons for denying the request. (AR at 284–85.) This analysis constitutes a "'discrete analysis supporting the ultimate conclusions.'" *Napa Valley Unified Sch. Dist.*, 496 F.3d at 942 (quoting *Park ex rel. Park v. Anaheim Union High Sch. Dist.*, 464 F.3d 1025, 1031 (9th Cir. 2006)). Accordingly, even if this Court looked to the merits of Plaintiff's arguments, Plaintiff would not prevail on this claim.

in the sense that an agency cannot preclude the exercise of that option, not that the hearing cannot go forward unless the party is provided representation.  *See J.R. ex rel. W.R. v. Sylvan Union Sch. Dist.*, No. CIV S-06-2136-LKK-GGH-PS, 2008 WL 682595, at *17 (E.D. Cal. Mar. 10, 2008), report and recommendation adopted, 2008 WL 2345103 (E.D. Cal. June 5, 2008); *see also Klein Indep. Sch. Dist.*, 711 F. Supp. 2d at 748–49 ("IDEA complainants are not entitled to have counsel appointed by the court, only to be accompanied by counsel they have retained at their own expense.").  Therefore, "[parents and students] must . . . be accorded a reasonable opportunity within which to obtain legal representation or the assistance of individuals with specialized knowledge."  *Sylvan*, 2008 WL 682595, at *60.

Plaintiff's argument is that Representative's failure to appear at the June 7, 2016 due process hearing and ALJ Marson's decision to conduct the hearing in Representative's absence demonstrates Plaintiff's right to representation was violated.  (ECF No. 27 at 17–18.)  However, Plaintiff's cited authority in support of his position is inapposite.  First, Plaintiff relies on *Commonwealth v. Cavanaugh*, 371 Mass. 46.  (ECF No. 29 at 10–11.)  However, *Cavanaugh* involved criminal law and a defendant's right to counsel in criminal prosecutions under the Sixth Amendment.  371 Mass. 46, 47, 50 (1976).  A due process hearing and the resulting appeals are not criminal matters.  20 U.S.C. § 1415(f), (i); *see also* Cal. Educ. Code § 56505(h), (k).  Accordingly, the right to counsel under the Sixth Amendment is not implicated in the instant action as it was in *Cavanaugh*, and Plaintiff's reliance on *Cavanaugh* is improper.  *See Texas v. Cobb*, 532 U.S. 162, 167 (2001) (noting the Sixth Amendment's right to counsel applies to criminal prosecutions).

Second, Plaintiff's citation to *Arnett*, 49 Cal. App. 4th 332, in support of his argument that he was denied *access* to an adjudicative body because he was deprived of representation is also unavailing.  (ECF No. 27 at 22.)  Contrary to Plaintiff's assertions, Plaintiff *accessed* the OAH numerous times throughout the OAH process, as demonstrated by Plaintiff's filings with the OAH and the ALJ's orders regarding those filings. (*See, e.g.*, AR at 41, 119.)  Moreover, Representative's failure to appear at the due process hearing does not mean Plaintiff was denied access to an adjudicative body.  *Cf. Christopher v. Harbury*, 536 U.S. 403, 415 (2002)

(determining that a denial of access to courts claim requires allegations of the official acts frustrating the litigation); *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 397 (1993) (noting that parties are generally held accountable for the acts and omissions of their chosen counsel).  Plaintiff does not allege any official acts that frustrated Representative's ability to appear at the due process hearing.

  Representative's failure to appear does not otherwise implicate Plaintiff's right to representation.  Here, Plaintiff was accorded a reasonable opportunity within which to obtain representation by counsel or an advocate.  *See* 20 U.S.C. § 1415(h)(1); *see also Sylvan*, 2008 WL 682595, at *60.  Plaintiff received a continuance so Plaintiff could retain counsel.  (AR at 33–34.)  Additionally, Plaintiff was represented at times throughout the process by Representative (*see, e.g.*, AR at 42), an individual with purportedly specialized knowledge, (*see* ECF No. 27 at 31).  Finally, Plaintiff does not allege that either Defendant or ALJ Marson prevented Representative from appearing at the due process hearing.  *Cf. Christopher*, 536 U.S. at 415.  Thus, Plaintiff's right to representation was not affected by Representative's failure to appear for the due process hearing.  *See Sylvan*, 2008 WL 682595, at *60.

  In sum, Plaintiff's right to representation was respected and Plaintiff was not denied access to OAH.  Accordingly, Plaintiff's right to representation is not grounds for reversing ALJ Marson's decision.

   *ii. Right to Present a Defense*

  Plaintiff contends he had the right to present evidence and to cross-examine witnesses at the due process hearing.  (ECF No. 27 at 18.)  Plaintiff argues the denial of the continuance deprived Plaintiff of the right to present evidence and to cross-examine witnesses because Representative could not appear absent the continuance.  (ECF No. 27 at 18.)  Defendant contends Parent could have exercised Plaintiff's right to present a defense at the due process hearing.  (ECF No. 26 at 18.)

  A party to a due process hearing has "the right to present evidence and confront, cross-examine, and compel the attendance of witnesses."  20 U.S.C. § 1415(h)(2); *see also* Cal. Educ. Code § 56505(e)(2)–(3).  However, a plaintiff's failure to appear at the IDEA administrative

17

hearing constitutes a waiver of rights which the plaintiffs cannot litigate upon appeal. *See Horen*, 655 F. Supp. 2d at 805–06; *United States v. Amwest Sur. Ins. Co.*, 54 F.3d 601, 602 (9th Cir. 1995) ("A waiver is an intentional relinquishment or abandonment of a known right or privilege.").

Here, Plaintiff had the right to present evidence and confront, cross-examine, and compel the attendance of witnesses; however, Plaintiff did not exercise this right even though Representative was fully aware that the due process hearing was scheduled to commence on June 7, 2016. (AR at 446.) Indeed, Representative filed a belated request to continue that hearing a mere one day before it was set to commence. (AR at 446.) This timing, along with other evidence cited by Presiding ALJ Broussard in her denial of Representative's request for continuance, is indicative of Representative's clear and unequivocal intent to waive whatever rights may have been exercised by appearing at a due process hearing that had been scheduled for more than a month. Representative's failure to attend the hearing on Plaintiff's behalf constituted waiver of Plaintiff's right to present evidence and confront, cross-examine, and compel the attendance of witnesses. *See Horen*, 655 F. Supp. 2d at 805–06 (holding the plaintiffs' failure to appear at the IDEA administrative hearing constituted a waiver of rights which the plaintiffs could not litigate upon appeal); *see also Torrance Unified Sch. District v. Student*, OAH Case No. 2012100114, at 1–2 n.2 (Dec. 24, 2012), https://www.dgs.ca.gov/OAH/Case-Types/Special-Education/Services/ Decisions?search=2012100114. Because Plaintiff waived these rights through the failure to appear at the hearing, Plaintiff on appeal cannot attempt to litigate issues regarding his right to present evidence and cross-examine witnesses. *See Horen*, 655 F. Supp. 2d at 805–06. Accordingly, the alleged deprivation of Plaintiff's right to present a defense is not a basis for reversing ALJ Marson's decision.

F. Student's Viable Defense

Plaintiff claims Defendant's OAH complaint seeks to enforce a settlement agreement, something OAH lacks jurisdiction over, and that Plaintiff was unable to raise this argument at the due process hearing. (ECF No. 27 at 27–28.) Further, Plaintiff points out Defendant's OAH complaint is similar to Defendant's complaint in OAH Case No. 2015080481, which stemmed

from the 2015 Settlement Agreement, and which was dismissed for lack of jurisdiction. (ECF No. 27 at 27.) Defendant argues Plaintiff did not raise any objections to the 2015 Assessment Plan, despite it being similar to the 2016 Assessment Plan. (ECF No. 28 at 5.)

Despite Plaintiff's assertion he was unable to raise the jurisdiction argument at the due process hearing, Plaintiff previously made this argument in the present case. Specifically, Plaintiff raised this exact argument in his motion to dismiss Defendant's OAH complaint. (AR at 42.) ALJ Coggins denied Plaintiff's motion to dismiss and found OAH had jurisdiction. (AR at 120.) Upon Plaintiff's motion for reconsideration, ALJ Coggins reconsidered Plaintiff's motion to dismiss and denied it once more. (AR at 175.) Thus, while the jurisdiction issue was not before ALJ Marson, it had already been considered in the present case and found meritless. (ECF No. 27 at 27.) Further, the reason why Plaintiff was unable to raise the jurisdiction argument at the due process hearing was because Representative failed to appear. Accordingly, Plaintiff's jurisdiction argument is not a basis to overturn ALJ Marson's decision.

G. Typographical Error in Defendant's Opposition to Plaintiff's Motion for Summary Judgment

Plaintiff points out Defendant's prayer for relief requests the Court find in favor of Plaintiff and reverse ALJ Marson's findings. (ECF No. 29 at 12.) Defendant responds that this was a typographical error and Defendant's position to uphold ALJ Marson's decision is clear. (ECF No. 30 at 8.)

While Defendant's opposition to Plaintiff's motion for summary judgment does ask the Court to find in Plaintiff's favor and reverse ALJ Marson's decision (ECF No. 28 at 8), Defendant admits this was a typographical error (ECF No. 30 at 8). However, typographical errors that are harmless, immaterial, or do not cause prejudice to the opposing party do not require reversal. *See, e.g.*, *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (finding that where the error was not prejudicial there was no cause for reversal); *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991) (finding that where the error was "immaterial" there was no cause for reversal). Defendant's position is clear in this action. Defendant has consistently asked for ALJ Marson's decision to be upheld and raised arguments accordingly. (*E.g.*, ECF No. 26 at 19; ECF

No. 30 at 8.)  Here, Defendant's typographical error is harmless, immaterial, and does not cause Plaintiff prejudice.  *See Burch*, 400 F.3d at 679.  Throughout Defendant's other filings, and even within the disputed sentence, Defendant made clear its argument to uphold ALJ Marson's Order.  *See Brawner*, 839 F.2d at 434.  Accordingly, typographical error in Defendant's prayer for relief is not grounds to reverse ALJ Marson's decision.

### H.  Cost-Shifting Order

In his complaint, Plaintiff asks for reversal of Presiding ALJ Broussard's order shifting Defendant's costs regarding the *ex parte* communication to Representative.[6]  (ECF No. 1 at 18.)  Defendant moves for summary judgment on this issue and argues the order thoroughly and carefully analyzed the issues and reached the proper conclusion.  (ECF No. 26 at 9.)  Despite Plaintiff referencing language within the cost-shifting order (ECF No. 29 at 5), Plaintiff does not oppose Defendant's request regarding the cost-shifting order.

An ALJ presiding over a special education proceeding can shift expenses from one party to another in certain circumstances.  Cal. Gov't Code § 11455.30(a); Cal. Code Regs. tit. 5, § 3088.  The ALJ may order "a party, the party's attorney or other authorized representative, or both, to pay reasonable expenses, including attorney's fees, incurred by another party as a result of bad faith actions or tactics that are frivolous or solely intended to cause unnecessary delay."  Cal. Gov't Code § 11455.30(a).  "Actions or tactics" include "the making or opposing of motions."  Cal. Civ. Proc. Code § 128.5(b)(1).  "Frivolous" means "totally and completely without merit or for the sole purpose of harassing an opposing party."  Cal. Civ. Proc. Code § 128.5(b)(2).  "Whether an action is frivolous is governed by an objective standard: any reasonable attorney would agree it is totally and completely without merit."  *Levy v. Blum*, 92 Cal. App. 4th 625, 635 (2001).

A review of the record supports Presiding ALJ Broussard's decision.  The evidence shows Representative's office sent the *ex parte* communications.  (AR at 348–49, 742.)  Further, the record also supports Presiding ALJ Broussard's determination that Representative was not a

---

[6]     Plaintiff's complaint asks the Court to "[r]everse shifting of fee order."  (ECF No. 1 at 18.)  However, no order shifting fees exists in this case.  The only order shifting responsibility for any litigation-related expenses is Presiding ALJ Broussard's order shifting costs.  (AR at 494.)

credible witness and could not fully explain the communications.  (*E.g.*, AR at 751–52.)
Representative stated the communications said "Motion to Reconsider" instead of "Motion to
Continue" due to a clerical error (AR at 751–52), despite the communications mentioning
"Motion to Reconsider" multiple times and containing an attached motion to reconsider (AR at
348–60).  These examples support ALJ Broussard's finding that Representative's action was
improper and constituted bad faith.  *See Levy*, 92 Cal. App. 4th at 635; *West Coast Dev. v. Reed*, 2
Cal. App. 4th 693, 702 (1992).  Additionally, the record reflects Defendant incurred expenses in
responding to the *ex parte* communications such that cost-shifting is appropriate.  (AR at 730.)
*See also* Cal. Gov't Code § 11455.30(a).  Accordingly, the Court finds that the evidence supports
Presiding ALJ Broussard's decision to shift costs.

**IV.  CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 26) is
GRANTED, and Plaintiff's Cross-Motion for Summary Judgment (ECF No. 27) is DENIED.
Accordingly, ALJ Marson's order permitting the reassessment of Plaintiff and ALJ Broussard's
order requiring cost-shifting are both upheld.

The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: July 31, 2019

Troy L. Nunley
United States District Judge